Entered on Docket
August 29, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: August 28, 2012



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 12-30344DM
LORE LEHR,                         )
                                   )
                     Debtor.       ) Chapter 13
_____)
```

MEMORANDUM DECISION ON OBJECTION TO CONFIRMATION,
OBJECTION TO CLAIM OF EXEMPTION AND MOTION TO DISMISS

I. <u>Introduction</u>

On August 6 and 7, 2012, the court conducted a trial in this Chapter 13 case. The debtor Lore Lehr ("Lehr") appeared and was represented by Cheryl C. Rouse, Esq. and Gary R. Brenner, Esq., two of her attorneys; creditor Ron Galatolo ("Galatolo") appeared and was represented by Brian Irion, Esq., his attorney.

For the reasons discussed below, the court will sustain Galatolo's objection to Lehr's claim of a homestead exemption and grant Galatolo's motion to dismiss this Chapter 13 case with prejudice.

II. <u>Procedural Background</u>

Lehr filed her Chapter 13 case on February 2, 2012, and filed her original Chapter 13 Plan on the same day. She then amended her Schedules B and C on February 16, 2012 (Docket No. 12).

Galatolo filed an objection to confirmation of Lehr's original Plan on March 14, 2012 (Docket No. 16), putting at issue Lehr's lack of good faith in filing her Chapter 13 petition. Lehr amended her Chapter 13 Plan on March 21, 2012 (Docket No. 19).

On March 29, 2012, Galatolo filed a combined Objection To Confirmation of First Amended Chapter 13 Plan and a Motion To Dismiss With Prejudice (Docket No. 25). In the motion he accused Lehr of concealing significant and material assets including a 2004 Porsche Cayenne S (the "Porsche") which he valued at between $23,000 and $25,000 (conceding a maximum exemption of $2,725 under applicable California law); jewelry and artwork he estimated to be worth between $18,000 and $20,000, subject to a maximum exemption of $7,175 under applicable California law; a Maui timeshare estimated to be worth $23,000 and listed by Lehr in her amended Schedule B with a value of $10,000; a lease security deposit of $2,100 Lehr did not disclose in her schedules; and a self-settled trust established in 2010 and to which Lehr transferred her home in 2011, but Lehr did not disclose in her Statement of Financial Affairs.

Galatolo also filed an objection to Lehr's claim of exemption on March 29, 2012 (Docket No. 30). In that objection he contended that Lehr was not living in her claimed residence when she recorded a declaration of homestead or later when she filed her Chapter 13 petition.

On April 27, 2012, the court held a pretrial hearing and set trial on all of Galatolo's matters for August 6 and 7. Then on May 18, Lehr filed denials of Galatolo's substantive allegations. Finally, on June 14, Lehr amended her Statement of Financial

Case: 12-30344    Doc# 72    Filed: 08/28/12    Entered: 08/29/12 13:44:54    Page 2 of 19

Affairs and included for the first time information about the Porsche (Docket No. 42).

III. <u>Facts</u>[1]

    A.  <u>The Patricia Avenue Residence</u>

On March 19, 2010, Lehr sold the Pavo Lane, Foster City property that she and Galatolo had formerly occupied during their marriage. Lehr received just over $213,000 from the sale (Exhibit N). Not long after that she rented a home on Sequoia Avenue ("Sequoia") in Burlingame. Then on December 3, 2010, she purchased a residence on Patricia Avenue ("Patricia") in San Mateo. A few days later on December 13, 2010, Lehr recorded a Homestead Declaration in San Mateo County (Exhibit 17). In that declaration she claimed Patricia as a declared homestead, reciting, in part, "the above-declared homestead is my principal dwelling. I am currently residing on that declared homestead."

Just prior to the close of escrow on Patricia, Galatolo obtained a judgment against Lehr in the amount of $182,990. An abstract of that judgment was recorded in San Mateo County on October 20, 2011 (Exhibit J).

Despite the fact that Lehr claimed Patricia as her homestead and stated that she resided there, the preponderance of the evidence rebuts that representation. When escrow closed on Patricia, Lehr moved some furniture from Sequoia or from some storage units and changed her address of record on her California drivers license. She also opened accounts with various utilities and used that address for some bank statements, doctors bills,

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-3-

etc.  She discovered or, more likely knew prior to the close of
escrow, that Patricia had serious physical problems including
termite infestation, flooding in the sink caused by a clothes
washer, wiring problems and other conditions reflected in
inspection and termite reports (Exhibits X and AA).

While Lehr started various corrective measures at Patricia,
including fence repair, tree removal, termite work, installation
of cabinetry and other furnishings and fixtures, she continued to
reside at Sequoia.  While there was testimony by a neighbor that
Lehr had left in late 2010, returning occasionally, three
particular pieces of evidence strongly corroborate the court's
finding that she still resided at Sequoia and not Patricia until
after bankruptcy:

(1) The utility bills at Patricia (and in particular the PG&E
billing records (Exhibit 4-1)) show very modest monthly bills for
that location compared to PG&E billing records for Sequoia
(Exhibit EE) for the same time period.

(2) Following Lehr's examination under Rule 2004[2] on March
14, 2012, she had an opportunity on April 12, 2012, to prepare an
errata sheet clarifying her sworn testimony.  That sheet
presumably was prepared by Lehr on her own and not under the
pressure of a deposition or oral examination by opposing counsel.
Correcting p. 17 at l. 1 of the transcript of her examination,
Lehr wrote "Clarification of residence" and stated:

> In December 2010 I purchased [Patricia].  I spoke with my
> landlord about giving notice and not renewing my lease.  At

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-4-

this time it was [sic] intent to move into Patricia and I started moving my belongings to Patricia. I filed my Homestead on December 13, changed my mailing address and license. The Patricia home was short sale 'as-is' property and although there were many issues noted on the home inspections, not all the issues had been disclosed at the time of purchase and there were numerous repairs needed on the house. Because of the unsafe conditions at [Patricia], i.e., plumbing causing major back-ups (unsanitary conditions) and flooding, faulty water heater installation causing carbon monoxide issue, water leaks on electrical panel in the garage, leaking roof, (multiple locations), electrical issues regarding lines to the house, mold, termites, and others, <u>I decided to stay longer at [Sequoia] so I could rectify all of the safety issues</u>. Additionally, my son PJ was in/out of both residences with me and assisting me to help get the home in working order. One of the delays in my move, was lack of funds to complete work on [Patricia], although it was slowly coming together and I was staying there more. <u>In December of 2011, I went in person to my landlord's home</u> and brought a bottle of wine. I told them that <u>I would be giving notice and moving out at the end of March</u>. They knew the story of my home in San Mateo and that I was trying to pay both the mortgage and rent on both properties with the assistance of my son. (Errata to Transcript of 2004 Examination; Emphasis Added)

(3) Amazingly, Lehr continued to pay all of the Sequoia utilities after her bankruptcy petition and up until the time she left there. She claims that this was merely done at the request of the landlord, a contention that is hard to believe from someone facing a substantial judgment and then filing bankruptcy unless she in fact was living a Sequoia until she vacated in April.

Lehr filed her Chapter 13 petition in this court on February 2, 2012; she did not vacate Sequoia until April, 2012. Thus, the fact that Lehr did not occupy Patricia when she declared her homestead In December, 2010, or when she filed her bankruptcy petition in February, 2012, is well-established by a preponderance of the evidence.

B. <u>The Porsche</u>

As part of Lehr's and Galatolo's divorce, Lehr became

-5-

entitled to and owned the Porsche. In January, 2012, Lehr sold the Porsche to her friend A.J. Costa for $3,000 (Exhibit 8). At the time of the sale the Porsche was worth at least $15,000, perhaps more. (Declarations of David Modderman and Michael Feller). Lehr did not offer any value evidence.

While Lehr contended that the Porsche had a defective transmission that was going to cost near $7,000 to repair, the evidence establishes that at worst the Porsche had a rough shift that could have been repaired for $1,000 to $1,500. Lehr also contended that the Porsche was in need of 80,000 miles service that would cost an additional $1,000. However, a few days prior to the sale the mileage on the Porsche was 69,470 and as late as July, 2012, it had no more than 2,500 more miles. Although the service may have been due because of the time the Porsche was operated rather than its mileage, Lehr provided no proof on that issue. Thus Lehr's contention that the Porsche was worth $8,000 less then any reasonable value, is not credible.

When she filed her original Statement of Financial Affairs Lehr did not disclose the transfer of the Porsche to Mr. Costa. On June 14, 2012, after Galatolo filed his objections and motion and flagged the Porsche issue, Lehr filed a Second Amended Statement of Financial Affairs where she disclosed information about the Porsche for the first time (Docket No. 42). There, in answer to question No. 10, Other Transfers, Lehr disclosed that A.J. Castor (sic) acquired the Porsche in December, 2011 (a date inconsistent with the January 5, 2012, bill of sale (Exhibit 8) and the January 20, 2012, registration with the Department of Motor Vehicles). Further, in answer to the portion of the

-6-

question asking for a description of the property transferred and the value received, Lehr stated:

> 2004 Porsche Cayenne S in the amount of $3,200 - (vehicle in accident and transmission went out).

That statement is false in at least three respects: first, the price paid by Mr. Costa was $3,000, not $3,200. Second, although the Porsche had been in two accidents in the prior year, repairs had been made to it and paid by Lehr's insurance company. Finally, her statement that "transmission went out" is patently false since Lehr has driven the car on and off ever since she "sold" it to Mr. Costa.

    C.  <u>The Storage Units</u>

During 2010-2012, Lehr used public storage facilities operated by All American Self Storage ("All American") in San Mateo and Millbrae Station Self Storage ("Millbrae Station") in Millbrae. In her sworn response to a request for production of documents on June 4, 2012, Lehr reported that she maintained Unit F 718 at All American from "May 19, 2012, to - currently renting" (Exhibit S-4). She also disclosed that she rented Unit R 129 at Millbrae Station from April 9, 2012 to June 9, 2012. The unit cost $200 per month to rent. She did not disclose and Galatolo did not learn until trial, that on April 2, 2012, Lehr rented storage Unit R 132 from Millbrae Station for $400 per month (Exhibit FF). That unit measures 10x30 feet and according to the manager of Millbrae Station, it would hold the equivalent of a four bedroom family home.

To make things worse, Lehr attempted to rent Units R 129 and R 132 from Millbrae Station using a pseudonym, Amanda Martinez.

-7-

The overwhelming inference from her attempt to do that was to conceal from Galatolo, and no doubt from the bankruptcy court, the existence and contents of Unit R 132. Lehr's failure to disclose that unit in her response to the request for production suggests that she is playing fast and loose with the truth and has no compunction about falsifying sworn statements.

That conclusion is further bolstered by the fact that nowhere in her Schedules or Statement of Financial Affairs is there any mention of personal property in storage. In fact, amended Schedule B values Lehr's tangible personal property as household goods and furnishings - $500, wearing apparel - $800, jewelry - $300. If that is all she owns there is no credible explanation for paying $600 per month to rent one an done-half storage units. And her Schedule J, Current Expenditures of Individual Debtors, does not reveal any monthly storage charges.

Lehr would have the court believe that because her adult daughter stores some possessions in the Millbrae Station storage units her daughter pays $400 a month, the amount charged for Unit R-132. That testimony is not believable given the fact that Lehr repeatedly stated that she has in storage various items of personal property of her own that she plans to move to Patricia. Further, if Lehr's daughter is paying the storage charges Lehr has not explained why, as recently as the Friday prior to trial, Lehr herself went to Millbrae Station and made a payment for rental of the storage units.

D. <u>Sequoia Lease Deposit</u>

When Lehr moved into Sequoia she paid a deposit of $2,100 that had not been refunded to her as of the date of her

bankruptcy.  The deposit is nowhere to be found in Lehr's Schedules of Assets and Liabilities.  At trial Lehr attempted, without success, to have the court believe that this deposit was not listed because she did not think she would ever get it back.  The inference is that she did not disclose it because she did expect to get it back.

The schedules call for a complete disclosure of entitlements, whether or not the debtor can realize them.  More specifically, Schedule B, Item 3, calls for disclosure of "Security deposits with public utilities, telephone companies, landlords, and others".  Lehr falsely checked "None" in response to that item on the schedule.

### E. Maui Timeshare

Lehr and Galatolo owned a timeshare in Maui that was dealt with upon the dissolution of their marriage.  Lehr contends that Galatolo is required to execute some sort of a conveyance of his interest to her and that he has not done so.  Galatolo does not dispute that contention but differs with Lehr as to the value of her interest in the time share.

Lehr disclosed this interest the first time she amended her Schedules B and C, before Galatolo filed any opposition.

The evidence as to the value of the timeshare was inconclusive due to the numerous differences among timeshares based upon their location, the times of year they are available, and various other levels of measurement of their quality.  The court makes no determination as to the value of the disputed timeshare.

### F. Jewelry, Artwork and Wine

Case: 12-30344    Doc# 72    Filed: 08/28/12    Entered: 08/29/12 13:44:54    Page 9 of 19

Galatolo contends that during their marriage he gave Lehr a Patek Phillipe watch which was worth $8,600 (Exhibit 13), another watch and some valuable jewelry. Galatolo contends that Lehr has concealed those items; Lehr contends that Galatolo has taken them. Lehr did not file any police report or insurance claim based upon her contention that Galatolo took those items, nor has she scheduled them as items still belonging to her.

The evidence is inconclusive whether Lehr has any valuable artwork. It was either lost, stolen or broken. The court makes no determination on this disputed fact.

Lehr also contends that she has five bottles of wine that are of sentimental value to her but do not appear on her schedules. Galatolo did not offer any evidence as to the value of that wine.

In sum, the evidence is overwhelming that Lehr has attempted to conceal the true circumstances of her place of residence, the details of her sale of the Porsche, and a quantity and location of personal property, the value of which is unknown, and that her Schedules and Statement of Financial Affairs, even after having been amended, are materially false in respect of the items discussed above.

IV. <u>Issues</u>

    A. Should the court dismiss Lehr's Chapter 13 case with prejudice?

    B. Should the court disallow Lehr's claim of homestead in Patricia, whether it be the declared homestead of December, 2010, or the automatic homestead effective on the February 2, 2012?[3]

---

[3] Galatolo contends that Lehr's current Chapter 13 Plan cannot be confirmed and that any valid homestead should be reduced or eliminated under § 522(o). The court does not deal with these issues because, as stated in the text, it is dismissing this case with prejudice. It does, however, address the specific homestead

-10-

V.  Discussion

    A.  The pivotal issue in this case is whether Lehr filed her Chapter 13 petition in bad faith.  If so, the court has the power to dismiss the case with prejudice.  Ellsworth v. Lifescape Med. Assoc. PC (In re Ellsworth) 455 B.R. 904 (9th Cir. BAP 2011); Leavitt v. Soto (In re Leavitt) 171 F.3d 1219 (9th Cir. 1999). The equivalent of a dismissal with prejudice is a determination that all debts are non-dischargeable under § 523.  Ellsworth, 455 B.R. at 921-922.  Stated otherwise, the result is the same as denial of discharge under § 727 in a Chapter 7 case.

    Bankruptcy Code 1307(c) sets forth nonexclusive grounds which may constitute cause for dismissal of a Chapter 13 case.  While not explicitly mentioned, the bad faith filing of a bankruptcy petition may also constitute cause for dismissal.  Leavitt, 171 F.3d at 1224.  In addition, a bad faith bankruptcy filing may justify dismissal with prejudice under § 349.  Id. at 1223.

    Recently the Ninth Circuit Bankruptcy Appellate Panel revisited the question of dismissal with prejudice in Ellsworth. There the court followed Leavitt and its direction that when considering dismissal of a Chapter 13 case due to bad faith in its filing, the bankruptcy court should consider the following factors: (1) whether debtor misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the petition in an inequitable manner; (2) the debtor's

---

entitlement issues because they would necessarily have to have been decided had the court not been persuaded to dismiss this case.

-11-

histories of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. Ellsworth, 455 B.R. at 917-918, citing Leavitt, 171 F.3d at 1224; see also, In re Ho, 274 B.R. 867 (9th Cir. BAP 2002).

Only the second Leavitt factor is inapposite here as Lehr has no history of prior filings or dismissals of cases. But the other three factors weigh heavily against her. First, as discussed, supra, debtor made many misrepresentations in her Schedules and Statement of Financial Affairs. This conduct is, in and of itself, manipulation of the Bankruptcy Code. Next, while she had other debts to discharge, the Galatolo judgment represents a substantial majority of the amount of unsecured claims in this case. Finally, egregious behavior is evident in Lehr's repeated omissions of material facts. This egregious conduct factor is somewhat repetitive of the first factor, namely proceeding in an inequitable manner. In any event the court is not obligated to count the four Leavitt factors as though they present some sort of a box-score but rather is to consider them all and weigh them in judging the "totality of the circumstances." Eisen v. Curry (In re Eisen), 14 F.3d 469 (9th Cir. 1994); Goeb v. Heid (In re Goeb), 675 F.2d 1386 (9th Cir. 1982). Plainly they weigh in favor of dismissal for cause.

It is also useful to consider by analogy whether had Lehr filed a Chapter 7 she likely would have her discharge denied under section 727. One of the grounds under section 727 to deny discharge is where a debtor knowingly and fraudulently made a false oath or account. To deny discharge under section

Case: 12-30344   Doc# 72   Filed: 08/28/12   Entered: 08/29/12 13:44:54   Page 12 of 19

727(a)(4)(A),[4] the objector must show: (1) debtor made a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently. Khalil v. Developers Surety and Indemnity Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Id. (quoting Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)).

At first blush, and each taken individually, some of the omissions and misstatements outlined above may seem minor. For example, nondisclosure of the lease security deposit or the old wine may be immaterial as a practical matter. However the totality of circumstances, including the pattern of omissions and suspicious timing of corrections, lead the court to conclude that Lehr knowingly and fraudulently made false oaths.

(1) False Statement or Omission

"A false oath may involve a false statement or omission in the debtor's schedules." Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005). "The same is true for statements made by the debtor when being examined at meetings of creditors." Phillips v. United States Trustee (In re Phillips), No. WW-09-1114-MoMkH, 2010 WL 6259975, at *6 (9th Cir. BAP April 6, 2010).

As set forth in the fact section, Lehr improperly claimed her

---

[4] Under section 727(a)(4)(A) "[t]he court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."

-13-

residence at Patricia, either as of the date of her declared homestead or of the date of her petition. She failed to disclose the circumstances surrounding the Porsche until Galatolo raised them, and even then in her amended Statement of Financial Affairs, Lehr misstated the condition of the Porsche, thus falsely suggesting a lower value at the time it was sold. She also misstated the existence of her personal property in storage both in her schedules and in her response to Galatolo's discovery. Finally, she made a false oath in her schedules when she did not disclose the security deposit at Sequoia.

(2) Material Facts

It should go without saying that a debtor's claim to a homestead exemption is material, and thus a false claim of exemption is equally material to creditors.

The failure to disclose the transfer and the proper value of the Porsche that Lehr sold for $3,000 is inexcusable. Indeed, even her counsel conceded at closing argument that there may be a fraudulent transfer action available to a Chapter 7 trustee against Mr. Costa for obtaining a valuable Porsche for only $3,000.

The falsity of Lehr's statements concerning the property in an undisclosed storage unit, totally unknown to the estate, the creditors and the court and disclosed only by Galatolo's witness at trial speaks for itself as to materiality.

Although the court cannot and does not find that the artwork, watches and jewelry are in the undisclosed storage unit, there is certainly an inference that is precisely so.

The court cannot say that the nondisclosure of five bottles

-14-

of sentimental wine is material.

(3) Knowingly and Fraudulently

"A person acts knowingly if he or she acts deliberately and consciously." Roberts, 331 B.R. at 883. "Recklessness does not measure up to the statutory requirement of 'knowing' misconduct." Id. at 884.

A debtor acts fraudulently if (1) he or she makes representations, (2) that at the time he or she knew were false, (3) with the intention of deceiving creditors. Khalil, 379 B.R. at 173. "Recklessness can be probative of fraudulent intent." Id. "Intent usually must be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. . . Recklessness can be part of that circumstantial evidence." Id. at 174.

Furthermore, "multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal." Khalil, 379 B.R. at 175 (quoting Garcia v. Coombs (In re Coombs), 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996)).

An inquiry as to Lehr's incentives to act as she has is hardly necessary. Her conduct was intentional, not just reckless. Falsely claiming a homestead and getting away with it exempts up to $75,000 of real estate equity. Lehr had every reason to prevent Galatolo from realizing on that equity. Hiding the sale of the Porsche sold to a friend for a nominal value while

-15-

continuing to have virtually unlimited access to it is creative, but it is also fraudulent, particularly when Lehr came forth with the facts only after Galatolo exposed them. Her incentive was clearly to maintain most of the indicia of ownership of the Porsche while moving it away from the claims of her creditors.

Finally, Lehr's outrageous yet futile attempt to conceal personal property kept in undisclosed Unit R-132 smacks of bad faith and mischief.

This case has been replete with omissions and misstatements coupled with suspicious timing and elusive explanations. Regardless of what Lehr may have thought or wanted to avoid, the totality of circumstances lead the court to find that Lehr acted knowingly and fraudulently.

Ellsworth instructs that since dismissal with prejudice is such a severe remedy, the court should use its discretion to order such a result in a two step process required in Leavitt. The first step, of course, is to determine if cause exists to dismiss. Ellsworth, 455 B.R. at 922. Once that cause is determined, as it has here, the court must next chose the appropriate remedial action. Id. In other words the second step of the two step process requires the court to consider whether something less than dismissal with prejudice would be sufficient. Ellsworth suggests that a bar on refiling for some length of time, or barring relief to a debtor under certain chapters of Title 11 might be appropriate.

The court will make this analysis in a two step process but is not obligated to do it in two separate hearings. Ellsworth confirms that the court has the discretion to determine whether

-16-

Case: 12-30344    Doc# 72    Filed: 08/28/12    Entered: 08/29/12 13:44:54    Page 16 of 19

bifurcation of the issues is appropriate and necessary under the circumstances. <u>Ellsworth</u>, 455 B.R. at fn. 13. The <u>Ellsworth</u> debtors complained about a lack of due process and notice and they did not advocate for or present evidence in support of any alternative to dismissal with prejudice. Here Galatolo put Lehr on notice in his March 29 motion to dismiss with prejudice what he was seeking. In her response Lehr did not advocate any bifurcation in the process or suggest an alternative remedy and in fact proceeded to trial on all issues.

On this record the court sees no purpose in delaying the matter further. The totality of the circumstances have been considered, the alternatives, although not raised by Lehr, have also been considered. A bar to a refiling for a short period of time would accomplish nothing since Lehr could once again claim a homestead in Patricia as of the date of her petition. Barring Lehr from filing under alternative chapters would also accomplish nothing since neither Chapter 7 or Chapter 11 would likely afford her any further relief. The egregious conduct shown would no doubt support denial of discharge under either of those chapters. On balance, the court is satisfied that Lehr's conduct in this case is the type of case following <u>Ellsworth</u>, <u>Leavitt</u> and others to justify the serious sanction of dismissal of her case with prejudice.

Lehr has abused the bankruptcy process and is therefore not entitled to any relief it would afford an honest debtor.

B. Lehr claimed the "automatic" homestead of California Code of Civil Procedure § 704.730(a)(1) as of the date of filing her Chapter 13 petition. Sections 704.710(a)(1) and 704.710(c)), as

-17-

part of same Article 4 of Chapter 4 of the Code of Civil Procedure, define "dwelling" to mean the place where the person claiming the exemption resides, and "homestead" to mean the principal dwelling in which the judgment debtor resides when the judgment lien attaches. The automatic exemption protects against a forced sale, and for bankruptcy purposes the petition date suffices in lieu of the forced sale date. In re Kelley (9th Cir. BAP 2003) 300 B.R. 11, 19, citing In re Anderson, 824 F.2d 754 (9th Cir.1987). Since the court has found that Lehr did not reside at Patricia on her petition date, the automatic exemption that she claimed must be disallowed.

The same result obtains under the declared homestead exemption of California Code of Civil Procedure § 704.910, the "declared" homestead exemption. That section exempts a declared homestead on a "dwelling", defined in § 704.910(c) to be an interest in real property as defined in § 704.710, described above. Since the court has found that Lehr did not reside at Patricia when she recorded her homestead declaration on December 13, 2010, the declaration was a nullity and she would not be entitled to an exemption before April, 2012, when she actually resided there.[5]

VI. <u>Disposition</u>

---

[5] See footnote 3. Dismissal of this case may moot whether Lehr is entitled to a homestead exemption as of February 2, 2012. But the determination of the homestead entitlement then or earlier, when declared in 2010, involves a specific factual inquiry that was tried to the court without objection, and the application of those facts to well-settled law. No purpose would be served by avoiding the decision now, only to run the risk of their being tried again in state court to where Lehr and Galatolo's battles will likely continue.

-18-

The court is concurrently issuing an order dismissing this Chapter 13 case with prejudice for the reasons stated in this Memorandum Decision.  Because Lehr will no longer be subject to the benefits or the burdens of the Bankruptcy Code, and further because her claim of either the declared homestead or the automatic homestead has been rejected, the court need not reach Galatolo's contentions under section 522(o), a very specific Bankruptcy Code burden, in which he would surcharge any otherwise valid homestead exemption.

**END OF MEMORANDUM DECISION**

-19-